In re TUTU WELLS CONTAMINATION LITIGATION.

Rhoda J. HARTHMAN, et al., Plaintiffs,

v.

TEXACO INC., et al., Defendants.

No. 1989–107.

Civ. A. No. 1989–220.

District Court, Virgin Islands,
D. St. Thomas and St. John.

Dec. 20, 1995.

---

Richard R. Knoepfel, Briggs, Knoepfel & Ronca, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, and Jeffrey T. Eddy, Joseph B. Cox, Jr., James M. Hughes, Charles W. Patrick, Jr., Frederick J. Jekel, Ness, Motley, Loadholt, Richardson & Poole, Charleston, South Carolina, and Thomas Alkon, Gordon Rhea, Thomas H. Hart, III, Alkon, Rhea & Hart, Christiansted, St. Croix, U.S. Virgin Islands, for PID–Harthmans.

Robert T. Lehman, Debra Rosen, William J. O'Kane, Christopher Gibson, Archer & Greiner, Haddonfield, New Jersey, and Douglas L. Capdeville, Christiansted, St. Croix, U.S. Virgin Islands, for Esso Standard Oil, S.A., Ltd., Esso Virgin Islands, Inc., and Esso Standard Oil, Co. (P.R.).

Richard E. Daley, Law Offices of Pattie & Daley, Christiansted, St. Croix, U.S. Virgin Islands, and Kell S. Damsgaard, Terri Jacobsen, Morgan, Lewis & Bockius, Philadelphia, PA, and William Stack, Houston, Texas, for Exxon Corporation.

Francis E. Jackson, Jr., Jacqueline Drew, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for Daniel Bayard.

John Newman, Diane Siana, Porzio, Bromberg & Newman, P.C., Morristown, New Jersey, and Kevin A. Rames, Christiansted, St. Croix, U.S. Virgin Islands, for Paul Lazare, Andreas Gal, The Duplan Corp., Laga Industries, Ltd., Panes Industries Inc. and Panex Co.

BROTMAN, District Judge, Sitting by Designation.

Presently before this court is the Motion of Esso and Exxon For Summary Judgment as to All Claims Based on the PID Plaintiffs' Assumption of the Risk.[1] For the reasons set forth below, the court must deny this motion.

## I. Factual and Procedural Background

Most of the underlying facts of this litigation were set forth in an Opinion dated August 13, 1993, published at 846 F.Supp. 1243 (D.V.I.1993) and supplemented in the Opin-

---

1. Although the Laga Defendants originally joined this motion, their subsequent settlement agreement with the Plaintiffs obviates the need for the court to address the merits of this motion with respect to them.

ion of August 11, 1994, published at 157 F.R.D. 367 (D.V.I.1994). Familiarity with the underlying facts is therefore presumed. In addition to this motion, the Esso Defendants [2] and Exxon filed several other motions for summary judgment [3] each attacking a narrow issue of the Plaintiffs' case. Given the importance of each of the issues raised, the court notes for the convenience of the reader that it will deal with each motion separately.

In support of its current motion, the Esso Defendants [4] present the following picture of the events leading up to the lease of the Harthman property by the PID Plaintiffs.[5] In 1985, along with another individual not relevant to this action, William Mahaffey and John Foster approached the Harthmans with a proposal to build a shopping mall on the Harthman property at Estate No. 3, Charlotte Amalie (the "Harthman property"). Subsequently, they entered into a series of options with the Harthmans to lease the Harthman property. The first lease expired without execution on May 24, 1987. On July 1987, Mahaffey and Foster entered into a new option with the Harthmans to lease the property (the "1987 Option"). On August 26, 1987, the PID Plaintiffs exercised the 1987 Option and entered into a long-term lease of the Harthman property which included the right to pump and sell water from that property.

Prior to executing the 1987 Option, Mahaffey and Foster had fairly limited knowledge of the extent, if any, of the contamination of the Turpentine Run Aquifer. In June of 1987, after arranging to fill the cistern at his home with water from the well of Boris Tillet ("Tillet"), Mahaffey noticed that the water had an unusual taste and smell. Mahaffey promptly questioned Tillet concerning the water and was reassured that the problem with the water was "harmless." Allegedly

later that same day, however, Tillet contacted Mahaffey and advised him to stop using the water as it may be contaminated and that government authorities were aware of his problem. After testing of the Tillet well by the Department of Planning and Natural Resources of the Virgin Islands (the "DPNR"), Tillet voluntarily closed his wells on July 8, 1987. After learning of Tillet's problems, Mahaffey contacted Albert Harthman ("Harthman") concerning the possible contamination of the wells located on the Harthman property. Apparently, Mahaffey was aware that both Tillet's well and those on the Harthman property were supplied by the Turpentine Run Aquifer. No doubt for this reason, on July 22, 1987, the DPNR first sampled water from the wells on the Harthman property. On July 23, 1987, Harthman voluntarily closed these wells. The next day, the PID Plaintiffs executed the 1987 Option.

After entering into that option, information began to become available about the scope of the possible contamination of the Turpentine Run Aquifer. On August 7, 1987, based on its preliminary findings, the DPNR issued an Order closing the area wells, including those on the Harthman property; Harthman apparently received a copy of this Order on or about the same day. In fact, throughout the month of August, the Harthman family was contacted several times by the DPNR for various information and access to their wells. As part of that investigation, the DPNR sampled the Harthman wells a second time on August 10, 1987. Arguably with full knowledge of the possible contamination of the aquifer and the on-going DPNR investigation, Mahaffey and Foster exercised their rights under the 1987 Option and leased the Harthman property.

Subsequent to executing the lease, Mahaffey and Foster began to develop the Harthman land. On October 8, 1987, Mahaffey and

---

2. The "Esso Defendants" are Esso Standard Oil S.A. Ltd., Esso Virgin Islands, Inc. and Esso Standard Oil Co. (Puerto Rico).

3. In addition to this motion, one or more of these parties has filed a summary judgment motion challenging the following issues: (1) the statute of limitations, (2) liability, (3) failure to pierce the corporate veil and (4) damages.

4. For the purposes of this summary judgment motion, the court will include Exxon in its definition of the "Esso Defendants."

5. The "PID Plaintiffs" consist of PID Inc., Water Services, Ltd. and Tutu Park, Ltd. William Mahaffey and John Foster own and/or control all of the PID Plaintiffs.

Foster created two of the PID Plaintiffs: Water Services Ltd. which would be responsible for carrying on the water business obtained from the Harthmans, and Tutu Park Ltd. which would be responsible for the development of a shopping center on the Harthman property. In March 1992 construction of the shopping center began, and the Tutu Park Mall opened for business on June 2, 1992.

Based in large part on these factual allegations, the Esso Defendants argue in their present summary judgment motion that the PID Plaintiffs assumed the risk of the environmental contamination of the Turpentine Run Aquifer of which they now complain.

## II. The Law

### A. Summary Judgment Standard

The standard for granting summary judgment pursuant to Federal Rule of Civil Procedure 56 is a stringent one. Summary judgment is appropriate only if all the probative materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). In determining whether there remain any genuine issues of material fact, the court must resolve all reasonable doubts in favor of the nonmoving party. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983) *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972); *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Significantly, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Under the standards announced by the Supreme Court's trilogy in *Celotex Corp. v.* *Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and *Matsushita,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10 (emphasis in original). Indeed, where the moving party has made a properly supported motion for summary judgment, it is incumbent upon the nonmoving party to come forward with specific facts to show that there is a genuine issue of material fact for trial. *Id.* at 248, 106 S.Ct. at 2510. Thus, once the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleadings, Fed.R.Civ.P. 56(e), but must produce sufficient evidence that will reasonably support a jury verdict in its favor, *Id.* at 249, 106 S.Ct. at 2510–11; *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring), and not just "some metaphysical doubt as to material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *see also, Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir.1991), *cert. denied,* 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991) (In opposing summary judgment, a non-movant may not "rest upon mere allegations, general denials, or ... vague statements."); *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990) ("unsupported allegations in [a non-movant's] memorandum and pleadings are insufficient to repel summary judgment").

A dispute involving a material fact is "genuine" only "if the evidence is such that a reasonable jury would return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Whether a fact is "material" is determined by the substantive law defining the claims. *Id.* at 248, 106 S.Ct. at 2510; *United States v. 225 Cartons,* 871 F.2d 409, 419 (3d Cir.1989). The Supreme Court observed that "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude an entry of summary judgment." *Id.*; *see also, Ness v. Marshall,* 660 F.2d 517, 519

(3d Cir.1981) (role of district court is to determine whether genuine issue of material fact exists). Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

Moreover, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litigation,* 916 F.2d 829, 860 (3d Cir.1990) *cert. denied,* 499 U.S. 961, 111 S.Ct. 1584, 113 L.Ed.2d 649 (1991).

Although the summary judgment hurdle is a difficult one to meet, it is by no means insurmountable. "Where the evidence is so one-sided that it leaves no room for any reasonable differences of opinion as to any material fact" this Court will grant summary judgment. *Tunis Bros. Co., Inc. v. Ford Motor Co.,* 763 F.2d 1482, 1489 (3d Cir.1985). Accordingly, in Celotex, the Supreme Court concluded that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex,* 477 U.S. at 323–324, 106 S.Ct. at 2553.

## B. Assumption of the Risk

■ In the Virgin Islands, the various provisions of the Restatement (Second) of Torts relating to the doctrine of the assumption of risk govern the present motion. 1 V.I.C. § 4; *Baumann v. Canton,* 7 V.I. 60, 69 (D.V.I.1968). Generally, § 496A of the Restatement provides:

> A plaintiff who voluntarily assumes a risk of harm arising from the negligent or reckless conduct of the defendant cannot recovery for such harm.

Restatement (Second) of Torts § 496A. Under Third Circuit precedent, a defendant must prove four elements to perfect the defense of the assumption of the risk under Virgin Islands law: (1) the plaintiffs had knowledge of the risk involved, (2) the plaintiffs appreciated the character of that risk, (3) the plaintiffs voluntary assumed that risk and (4) the plaintiff's conduct in knowingly and voluntarily confronting the risk was reasonable. *Smollett v. Skayting Development Corp.,* 793 F.2d 547, 550 (Mansmann, dissenting) (3d Cir.1986); *Keegan v. Anchor Inns, Inc.,* 606 F.2d 35, 40–41 (3d Cir.1979); *see also,* W. Page Keeton, et. al., Prosser and Keeton on Torts § 68, at 498 n. 66 (5th ed. 1984). With respect to the elements of knowledge and appreciation, the comment to § 496D of the Restatement provides, in relevant part:

> The basis of assumption of risk is the plaintiff's consent to accept the risk and look out for himself. Therefore he will not be found ... to assume any risk unless he has knowledge of its existence. This means that he must not only be aware of the facts which create the danger, but must also appreciate the danger itself and *the nature, character, and extent which make it unreasonable....* His failure to exercise due care either to discover or to understand the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence.

Restatement (Second) of Torts § 496D, comment b (emphasis added). Further, the court must apply a subjective standard in determining whether a defendant can prove the factors in a given case. Restatement (Second) of Torts § 496D, comment c. Such a subjective determination is "a question of fact, usually to be determined by a jury under proper instructions from the court." Restatement (Second) of Torts § 496D, comment e. For the purposes of this summary judgment motion, the court may itself determine whether the Plaintiffs assumed the risk in this case only "where reasonable men could not differ as to the conclusion." Restatement (Second) of Torts § 496D, comment e.

With the general summary judgment standard in mind and the law governing the defense of the assumption of risk, the court will now turn to the merits of the Esso Defendants' motion.

### 1. The Element of Reasonableness

■ The court must deny the Esso Defendants' summary judgment motion because they have failed to make any showing with respect to the element of reasonableness. In addition to knowledge and appreciation of the risk, the Third Circuit has indicated that under Virgin Islands law, a defendant must show that the plaintiff's assumption of such risk is "reasonable" in order to perfect a defense of assumption of the risk. *See, Smollett,* 793 F.2d at 550; *Keegan,* 606 F.2d at 40–41. Because the Esso Defendants did not address this element of their defense either in their supporting memoranda or during oral argument, they have failed to meet their initial burden on summary judgment of proving every element of its defense; thus, the court must deny their present motion.

### 2. The Elements of Knowledge and Appreciation

■ Even if the Esso Defendants had addressed the element of reasonableness, the court would still be prohibited from granting summary judgment in their favor. Despite the Esso Defendants' arguments to the contrary, the court finds that a defendant must show that a plaintiff had the knowledge and appreciation *of the extent of the danger* that he allegedly assumed. *See,* Restatement (Second) of Torts § 496A, comment b. Applying this standard, the court finds that more proof is required before the court will hold, as a matter of law, that the Plaintiffs assumed the risk of the Esso Defendants' actions in this case. The Esso Defendants acknowledge the Plaintiffs' claims that they did not know the extent of the contamination at the time the Plaintiffs exercised and later signed the lease to the Harthman property. In response, the Esso Defendants point only to the Plaintiffs' knowledge of a newspaper article which suggested that the Turpentine Run Aquifer could remain contaminated for an extended period as evidence of the extent of Plaintiffs' knowledge and appreciation of the long-term dangers posed to their wells by the contamination. On review of the parties' submissions, the voluminous record of this case and the court's own familiarity with the St. Thomas community, the court is satisfied that reasonable persons could differ in determining whether the Plaintiffs knew and appreciated the extent of any contamination and the consequences of such contamination to their wells at the time that the Plaintiffs executed and later signed the lease.[6] Further, to the extent that the Plaintiffs may have been less than diligent in seeking the facts underlying the extent of the danger posed by the contamination prior to executing the lease, the Esso Defendants may rely on the doctrine of contributory negligence rather than that of assumption of the risk. Restatement (Second) of Torts § 523, comment f. *Accord, Indiana Harbor Belt Railroad Co. v. American Cyanamid Company,* 662 F.Supp. 635, 645–46 (N.D.Ill.1987) (In an environmental contamination case raising a claim for strict liability, the "plaintiff's failure to discover or understand the true character of the danger, even if negligent, is not assumption of the risk."); *Amland Properties Corp. v. Aluminum Co. of America,* 711 F.Supp. 784, 802, 803 (D.N.J.1989).

### 3. The 1987 Option

Finally, the court would hesitate before granting summary judgment in this case because the court finds that the economic premise of the Esso Defendants' argument may be flawed.[7] Throughout their memoran-

---

6. Upon review of each individual's credentials and the relevant depositions, the court must reject on summary judgment the Defendants' argument that the Plaintiffs must be held to a higher standard of knowledge and appreciation due to the real estate expertise of Mr. Mahaffey and Mr. Foster. Even if a higher standard applies to certain professionals, the court finds reasonable persons could differ in determining whether the credentials of these two individuals gives rise to such a standard. Although these individuals may have extensive real estate experience, they do not appear to have any experience with contaminated real estate.

7. Neither of the parties raised this issue and it is unnecessary for the disposition of the pending motion; thus, the court recognizes that this dis-

da and the oral argument, the Esso Defendants have argued that the Plaintiffs assumed the risk of the extent of the contamination of the Turpentine Run Aquifer based on what the Plaintiffs knew at the time they executed and signed the lease.[8] However, the Esso Defendants have failed to show that the Plaintiffs had the requisite knowledge and appreciation at the time they purchased the 1987 Option. In fact, the Defendants' own references to the record suggests strongly that almost all of the facts surrounding the contamination of the aquifer became known *after* the Plaintiffs purchased the 1987 Option. *See generally*, Memorandum of the Esso Defendants at 3–10.

By purchasing the 1987 Option, the Plaintiffs acquired an economic interest in the Harthman Property which included possible water rights. In some sense, the Plaintiffs did not hold any greater interest in Harthman Property after exercising the 1987 Option than they did after the original purchase of the option. Rather, by exercising the option, the Plaintiffs assumed various liabilities to the Harthmans. Because none of the parties addressed the issue of the 1987 Option in the context of the defense of the assumption of the risk, the court is wary to address the issue *sua sponte* and on that basis enter summary judgment against the Plaintiffs. *Cf.*, Restatement (Second) of Torts § 523, comment f (a plaintiff "is not required to forego the exercise of a valuable right or privilege merely because the defendant's activity has made it dangerous unless the danger is so extreme that the continued exercise of the right or privilege is clearly unreasonable"); Restatement (Second) of Torts § 912, comment f ("If a person can prove but for the tortious interference of another, he would have received . . . a specific profit from a transaction, he is entitled to

full damages for the loss that has been caused to him.")

### III. Conclusion

For the alternative reasons set forth above, the court must deny the present motion. The court will enter an appropriate order.

cussion is dicta. However, the court seeks merely to outline its specific concerns regarding the theoretical underpinnings of the Esso Defendants' assumption of risk defense to aid the parties in preparing for the pending trial. Further, these concerns should not be taken as dispositive of any ultimate ruling by the court on the merits of this defense or on the extent of damages, if any, which may flow from the court's concerns.

8. The Esso Defendants argue that the PID Plaintiffs could have renegotiated the 1987 Option prior to executing the option given the information that surfaced prior to that time. In theory, however, once the PID Plaintiffs had purchased the 1987 Option, any subsequent tortious interference with the property underlying the option results in converting any lost profits to the PID Plaintiffs into a cause of action.