**Gilbert Don PROCTOR,
Appellant/Cross–
Appellee,**

v.

**NORTH SHORE PARTNERS, INC., Development Consultants, Inc., and Parallel Construction Corporation, Appellees/Cross–Appellants.**

No. CIV.A.1999/032.

District Court, Virgin Islands,
Appellate Division,
D. St. Croix.

Considered: Sept. 28, 2001.

Filed: Sept. 23, 2002.

---

Thomas H. Hart, Charles S. Siegel, St. Croix, VI, for Appellant/Cross–Appellee.

Douglas L. Capdeville, James L. Hymes, III, St. Croix, VA, for Appellees/Cross–Appellants.

Before: RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and RHYS S. HODGE, Judge of the Territorial Court of the Virgin Islands, Division of ST. THOMAS and ST. JOHN, Sitting by Designation.

## OPINION OF THE COURT

PER CURIAM.

Gilbert Don Proctor ("appellant/cross-appellee" or "Proctor") fell from a roof being constructed at the King's Alley Arcade ("King's Alley") and brought an action for damages in the Territorial Court. Proctor sought to recover medical expenses, pain and suffering, impairment, disability, lost earnings and lost earning capacity. At the close of Proctor's case, North Shore Partners, Inc. ("North Shore"), Development Consultants, Inc. ("Development"), and Parallel Construction Corporation ("Parallel") (collectively referred to as "appellees") moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). The Territorial Court granted judgment as a matter of law on all claims in favor of appellees. Proctor now appeals that decision and presents the following issues for review:

1. Whether the Territorial Court erred in holding that there was no evidence from which the jury could reasonably infer that appellees knew, or should have known, of the presence of oil on the galvanized sheeting.

2. Whether the Territorial Court erred in holding that, as a matter of law, there was no evidence of "active par-

ticipation" by appellees in the roofing work.

3. Whether the Territorial Court erred in holding that, as a matter of law, the roofing work did not present a "peculiar risk," within the meaning of the Restatement (Second) of Torts §§ 416 and 427.

Appellees cross-appealed for this Court to determine whether the Territorial Court erred in finding that Proctor did not assume the risk of his injuries. For the reasons stated below, the January 22, 1999 Judgment of the Territorial Court is affirmed.

## FACTS

Development holds a Master Lease for certain premises located in King's Alley, and is the owner/developer of the King's Alley project. On May 14, 1995, Development hired Parallel as the general contractor for the construction of buildings and improvements at King's Alley. Parallel, in turn, hired various subcontractors to perform particular jobs at King's Alley.

On August 3, 1995, North Shore was hired by Parallel to install the roofing and other work at a total contract price of Six Hundred Eighty–Five Thousand Three Hundred Ninety–Five Dollars ($685,-395.00). The portion of that money allocated to the roofing work on the building at issue, Building 8, was Fourteen Thousand Three Hundred Dollars ($14,300.00). North Shore subcontracted the roofing work to Graci Brothers via an oral contract. (Joint Appendix ("J.A.") at 337B–341, 342.)

Graci Brothers is owned by Samuel and Rodney Graci. In February 1996, Graci Brothers hired Delroy George ("George") to do part of the roofing work on Building 8. George, who had neither a business license nor a contractor's license, commenced work on February 29, 1996.

George alleges that he was supervised and paid by Rodney Graci. (*Id.* at 99.) George further contends that he was never given any documents detailing safety instructions or Occupational Safety and Health Administration ("OSHA") guidelines. (*Id.* at 73–74.)

On March 1, 1996, George's second day on the job, he and two employees, Adonis "Dennis" McCoy ("McCoy") and Joseph Parris, Jr. ("Parris") were installing galvanized metal sheeting (commonly referred to as "galvanize") on the roof of Building 8. At the time relevant to this discussion, McCoy and Parris were on the roof, and George was on a lower level cutting installation. George saw Proctor walking in the alley below, and invited him to inspect the work being done on the roof. Proctor and George had worked together on several jobs in the past, and George testified that he hoped Proctor, an experienced contractor, would advise him whether the work performed was properly done, not only for his benefit, but also for the benefit of North Shore. (*Id.* at 65.)

When Proctor got to the roof, he greeted McCoy and Parris and stepped onto the galvanized sheeting to walk in the direction of the workmen. Proctor testified that he did not think he needed a rope to walk across the galvanized sheeting, because his practice all his adult life had been to step on the screw heads. (*Id.* at 220–21.) There are differing accounts of what happened next. Proctor testified that he took no more than two steps before he slipped and slid over the side of the roof approximately 26–28 feet to a ditch below. McCoy testified, on the other hand, that Proctor had walked "[a] good distance" on the roof before he fell. (J.A. at 140.) Stephen Hendren ("Hendren"),

the Vice President of Development and President of Parallel, testified that in a conversation with Proctor several months after the accident, Proctor stated that he had "messed up and tripped and fell." (*Id.* at 426.)

Proctor's injuries included a compound fracture of his left arm with torn skin and exposed bone, a fractured right heel, a chipped bone in his back, fractured ribs, a cracked pelvic bone, a bruised aorta and a collapsed lung. (*Id.* at 178.) As a result, he underwent extensive medical treatments and rehabilitation over the next several months. Not surprisingly, the cause of Proctor's fall, as well as which party bore the responsibility of providing safety equipment were hotly contested issues at trial.

At the close of Proctor's case-in-chief, appellees moved for a directed verdict pursuant to Federal Rule of Civil Procedure 50. The trial judge granted appellees' motions, and dismissed this matter. This appeal followed.

## I. DISCUSSION

### A. Jurisdiction and Standard of Review

█ This Court has jurisdiction to review the judgments and orders of the Territorial Court in all civil cases pursuant to v.I. CODE ANN. tit. 4, § 33 (1997 & Supp. 2001); Section 23A of the Revised Organic Act of 1954.[1] The Federal Rules of Civil Procedure provide that:

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party

---

1. The Revised Organic Act of 1954 is found at 48 U.S.C. § 1613a (1994), *reprinted in* V.I. CODE ANN., Organic Acts, 73–177 (codified as amended) (1995 & Supp.2000) (preceding V.I. CODE ANN. tit. 1) ["Revised Organic Act"].

and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

FED. R. CIV. P. 50(a)(1).[2] This Court exercises plenary review of the Territorial Court's grant of judgment as a matter of law. *See Alexander v. University of Pittsburgh Med. Ctr.*, 185 F.3d 141, 145 (3d Cir.1999).

**B. The Territorial Court did not err in holding that there was no evidence from which the jury could reasonably infer that appellees/cross-appellants knew, or should have known, of the presence of oil on the galvanized sheeting.**

Proctor admits that he did not go to the roof on March 1, 1996 on the request of anyone from Development, Parallel or North Shore, and he was not an employee of either George or any of the appellees. He was on the roof solely on George's invitation. Proctor argues, however, that the trial court erred as a matter of law in concluding that no reasonable jury could find that appellees knew or should have known of the presence of oil on the galvanize. (Brief of Appellant/Cross–Appellee at 14.)

George Jefferson Greene, Jr. ("Greene"), a consulting engineer specializing in accident reconstruction, failure analysis and safety engineering, concluded that missing screws alone would not have caused Proctor's fall. (*Id.* at 252, 298.) Greene further testified that Proctor's fall was caused by the presence of oil on the galvanize. (*Id.* at 301.) In Greene's opinion, the primary responsibility for safety lay with the general contractor, Parallel,

and North Shore as the subcontractor was "certainly aware of the need for this safety equipment." (*Id.* at 271.) Greene also testified that under George's contract he did not, and could not supply any safety equipment, mainly because the amount he was paid to perform the roofing work was insufficient to expect him to assume that responsibility. (*Id.* at 271, 288.) George alleged that he was paid approximately $2,700.00 to perform the work (*id.* at 49), but Samuel Graci testified, and supplied evidence of checks, that George was paid approximately $4,300.00 (*id.* at 351, 369). Because Greene testified that it was a "common practice" for galvanize to arrive with oil from the manufacturer, Proctor argues that the jury could have inferred that appellees knew or should have known of the risk posed by the oil from circumstantial evidence. (*Id.* at 14–15.)

Development and Parallel contend, on the other hand, that "none of the [a]ppellees testified about knowing of this alleged 'common practice', and [a]ppellant has not and cannot point to one iota of concrete evidence in the record to support his speculative argument that [a]ppellees knew of the presence of oil on the galvanized sheeting. Likewise, any knowledge of Delroy George or his crew about observing oil on the galvanized sheeting cannot be imputed to [a]ppellees." (Brief for Appellees/Cross–Appellants Development and Parallel at 11.)

North Shore argues that it had no employees at Kings Alley on the day of the accident, and more importantly, had no employees on the roof prior to Proctor's fall; that it had no relationship whatsoever with Delroy George; and, finally, that it was Rodney Graci of Graci Brothers who supervised Delroy George and his crew.

---

2. "The practice and procedure of the Territorial Court shall be governed by the Rules of the Territorial Court and, to the extent not inconsistent therewith, by ... the Federal Rules of Civil Procedure ...." TERR. CT. R. 7.

(Brief of Appellee North Shore at 9; *see also* J.A. at 381.) North Shore, therefore, reasons that it could not have known of the existence of oil on the galvanize, if any, and appellant failed to prove otherwise. North Shore contends that the RESTATEMENT (SECOND) OF TORTS § 343A is controlling on this issue.[3] Section 343A sets forth the duties of a possessor of land where there are known or obvious dangers, and provides that:

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

RESTATEMENT (SECOND) OF TORTS § 343A. Section 343A further explains that, although a possessor will not be liable for known or obvious dangers,

[t]he word "known" denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves. Thus the condition or activity must not only be known to exist, but it must also be **recognized** that it is dangerous, and the probability and gravity of the threatened harm must be appreciated. "Obvious" means hat both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.

RESTATEMENT (SECOND) OF TORTS § 343A cmt. b (1965) (emphasis added). "Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against danger which are known to the visitor, or so obvious to him that he may be expected to discover them." *Id.* at cmt. e. Nonetheless, the possessor of land may remain liable, even where a danger is known or obvious to the persons at risk, if the possessor should "anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger." *Id.* at cmt. f; *see also Jackson v. Topa Equities,* 41 V.I. 388, 393 n. 3, 1999 WL 641430 (D.V.I.1999) ("A contractor's employees, along with other invitees, still have the right to sue for latent defects on the land ... or for 'known or obvious' dangers whose harm should have been anticipated.")

█ Interestingly, there was no testimony on the record before this Court that would indicate how long it takes for the oil film on galvanize to dry, or how long the galvanize in question had been exposed to the sun. Instead, Proctor simply argues that it was a common practice to have a film of oil on new galvanize, and appellees should have been aware of this danger. Proctor failed, however, to put forth any evidence that appellees knew, or should have known, of the presence of oil. The trial judge ruled that "[n]one of the defendants in this case, under the testimony in this case, knew of the risk to the plaintiff, if he was as in this case, a business invitee of Mr. George .... Number one, they did not know the danger existed so they had no duty to warn him because they didn't know." (J.A. at 492.) Additionally, George never warned Proctor about the allegedly slippery condition on the roof;

---

3. In the absence of local law to the contrary, the American Law Institute's various Restatements of Law are the rules of decision in the Virgin Islands. 1 V.I.C. § 4.

and there is no evidence that any of the appellees knew of the existence of this danger, particularly in light of the undisputed fact that the oil film is not a permanent condition of the galvanize. It dries in the sunlight. Having reviewed the record before this Court, we affirm the trial judge's finding that there was no evidence from which the jury could reasonably infer that appellees/cross-appellants knew, or should have known, of the presence of oil on the galvanized sheeting.

## C. The Territorial Court did not err in holding, as matter of law, that there was no evidence of "active participation" by appellees in the roofing work.

The Restatement provides that

[o]ne who entrusts work to an independent contractor, but who retains the control of any part of the work, *is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care,* which is caused by his failure to exercise his control with reasonable care.

RESTATEMENT (SECOND) OF TORTS § 414 (emphasis added).

At the close of Proctor's case, the trial judge ruled that

as the owner of the premises, [defendants] retained the right to conduct, establish safety programs and to make safety inspections, but the evidence in this case is such that you can show no active participation by any of the defendants in the operation of the activities of Mr. Delroy George to give then such an involvement in the activities to have them responsible for the injuries that took place as a result of his activities on the land.

... Under these circumstances, the Court would find as a matter of law that the mere fact the defendants retained the right to impose a safety program without more is not sufficient to expose them to liability for the conduct of the subcontractor in this case and for that reason the Court will dismiss the complaint in its entirety as to all the defendants for there is no showing, number one, the defendants knew of the danger or the risk involved that caused the injury to Mr. Proctor and, number two, it does not show a sufficient involvement in the operations of the installation of the galvanize roofing to, as a matter of law, send the matter to the jury.

As a matter of law, the facts in this case do[ ] not arrive to that sufficient control that would impose liability in any of the defendants. For that reason, the Court would dismiss the complaint ....

(J.A. at 492–93.)

Proctor contends that even if appellees did not retain enough control over the roofing work to subject them to liability under respondeat superior principles, but retained "the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to [themselves] or others, liability may obtain unless reasonable care is exercised." (Appellant's Brief at 10.) Control, Proctor argues, "is a factual issue to be resolved by the jury." *Hood v. Hess Oil Virgin Islands Corp.,* 22 V.I. 456, 463, 650 F.Supp. 678, 680 (D.Vi.1986). Proctor also argues that Development and Parallel "supervised" the entire job, and North Shore provided the galvanize as well as the equipment to lift the galvanize to the roof. (Appellant's Brief at 18; J.A. 50–51, 56, 338.)

In support of Proctor's argument, George testified that he was not free to do the job in his own way, because when he requested scaffolding, he was told by Rodney Graci that it was not necessary. (J.A. at 69–70.) Proctor's engineer, Greene,

also testified that Development and Parallel were responsible for a safe work place, but Parallel, as the primary contractor, bore the heaviest duty. Moreover, Proctor contends that appellees exercised requisite control for several reasons. First, Samuel Graci (Vice President of North Shore and co-owner of Graci Brothers) would "walk the job" from time to time, and "would typically note if someone was . . . installing something improperly or wasn't working properly . . . ." (Appellant's Brief 26; J.A. at 348.) Second, Hendren and Ross (principals of both Development and Parallel) were at the site almost every day, and were available to answer questions about safety matters. (J.A. at 357.) Third, Samuel Graci testified that he regularly told workers to put on their hard hats. (Appellant's Brief 26; J.A. at 358.) Fourth, Ross' office had glass walls with a

direct view of the site, and either he or Hendren was at the site on most days. (J.A. at 414.) Finally, Proctor argues that Parallel issued a safety memorandum[4] which "reflects and evidences control." (Appellant's Brief 26 at 28.) For these reasons, Proctor contends that "the record contains ample evidence from which the jury could have concluded that appellees 'retain[ed] control over the actual conduct of work,' and 'assumed affirmative duties with regard to safety.' " (Appellant's Brief at 29.) Accordingly, Proctor argues that because this is not one of the cases in which a reasonable jury could have reached only one conclusion on the issue of control, the trial judge's ruling on this issue should be reversed.

Development and Parallel argue that they did not supervise George or his crew

4. SAFETY AND HEALTH PROGRAM

All subcontractors and personnel are responsible for maintaining a safe working environment at ALL times.

All subcontractors are responsible for implementation and maintenance of safety and health programs for their employees.

Every employee shall be properly trained in the use or operation or the tools or equipment they are using.

Every employee should avail himself to read the OSHA manual that is kept in the main office.

A First Aid Kit is available at the main office, Every subcontractor must also maintain a First Aid Kit at all times.

Fire extinguishers are available on the job site. Make sure all employees are aware of the locations.

Every employee shall do his part every day to insure that the jobsite is kept clean and free of all deleterious materials such as nails, scrap lumber with protruding nails and all other loose debris.

Ground fault protection power is provided for your use at the temporary power pole. Use it and use it safely in conjunction with ground fault protected outdoor type receptacles on approved power cords.

*All employees are to be properly outfitted with all such safety and health devices or appliances as are required in the performance of their duties. These items include, but are not limited to, safety shoes, hard hats, eye and ear protection and adequate clothing.*

*Every subcontractor shall insure by personal inspection that all equipment, tools, scaffolding, ladders, etc. are approved by OSHA and all other agencies responsible for use in general construction.*

Parallel Construction's superintendent, Edward Fleming, is the person in charge of maintaining the safety program for our company. All questions regarding compliance or any other aspect of safety and health shall be directed to him.

*Subcontractor or employees who willfully violates any part of the OSHA construction industry standards for safety and health (29 CFR 1926/1910) shall be subject to cancellation of their contract and/or dismissal.*

Everyone please do your part to insure we have a safe jobsite by holding your regular safety meetings and complying with the daily and weekly jobsite inspection requirements of this program.

(Joint Appendix (Plaintiff's Exhibit 49) at 497–98 (emphasis added).) There is some question whether this safety information was distributed to Parallel's subcontractors.

in any way. Instead, Graci Brothers supervised George, and Parallel delegated the responsibility for job safety to North Shore by contract. In short, the acts delineated by Proctor in an attempt to show control by appellees are, according to Development and Parallel, insufficient to establish control. Finally, Development and Parallel argue: (1) that Proctor's allegation that George was denied safety equipment is a "red herring", because "[s]afety gear cannot be considered part of the 'operative details' of the work;" (2) "the use or non-use of safety equipment is irrelevant to the operative steps and procedures ordinarily utilized in laying galvanized sheeting;" (3) "there was no evidence adduced at trial that Appellees were to provide any subcontractor with safety gear;" and lastly, (4) there was testimony that George was paid $4,300—enough money to purchase safety gear for himself and his two workers. (Brief for Appellees/Cross–Appellants Development Consultants, Inc. and Parallel Construction Corp. at 15.)

North Shore argues that its role was to "watch quality control and the progress of the construction," and it did not "control[ ] the work of subcontractor employees from a liability standpoint." (Brief of Appellee North Shore Partners, Inc. at 14.) Instead, it was Graci Brothers who had the responsibility of supervising George's work. North Shore urges this Court to reject Proctor's argument that appellees' alleged violation of 24 V.I.C. § 35(c)[5] exposed them to liability under the RESTATEMENT (SECOND) OF TORTS § 424 which provides:

> One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

RESTATEMENT (SECOND) OF TORTS § 424. First, North Shore argues that Proctor was not an employee of appellees or George when he fell from the roof, and, therefore, has no standing to claim protection from an OSHA violation. Second, although the trial judge ruled that Greene would not be allowed to offer opinions about OSHA violations on this job site,[6] Greene testified that OSHA requires the use of either a hard or personal fall protection equipment. As such, North Shore contends that the absence of a scaffold is not, in and of itself, evidence of an OSHA violation.

It's not clear under which issue Proctor intended to connect a violation of 24 V.I.C.

**5.** The Virgin Islands Code sets forth the duties of an employer under the Occupational Safety and Health Administration as follows:

(a) Each employer—

(1) Shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees:

(2) Shall comply with occupational safety and health standards promulgated or adopted under this chapter:

(b) Each employee shall comply with occupational safety and health standards and all rules, regulations and orders issued, pursuant to this chapter which are applicable to his own actions and conduct.

(c) Each owner, lessor, agent or manager of any premises used in whole or in part as a place of employment shall comply with the Safety and Health Standards, and all rules, regulations and orders issued pursuant to this chapter. Failure to so comply shall make an owner subject to the penalties and enforcement procedures of this chapter, but shall not relieve any employer from providing his employee with the protections required by this chapter.

24 V.I.C. § 35.

**6.** See J.A. at 282.

§ 35(c) to liability under the RESTATEMENT (SECOND) OF TORTS § 424. In five pages of what he generally categorizes as "governing principles", (Appellant's Brief at 9–13), Proctor links a violation of § 35(c) to Restatement § 424, but he does not make this argument as it relates to any of the three issues at hand. Development and Parallel simply ignore the issue, but North Shore discusses liability pursuant to Section 424 under the separate and arguably unrelated issue of whether there was "active participation" by appellees in the roofing work. Proctor's reply brief then proceeds to do likewise.

North Shore argues that OSHA only applies in the employer/employee context, and Proctor was not an employee. Proctor is, therefore, barred from seeking recovery under Section 424. On the other hand, Proctor argues that given the stated purpose of the Virgin Islands OSHA statute (24 V.I.C. § 31), OSHA provisions apply to both "workers" and "citizens". "Appellant is thus part of the class of persons 'for whose protection the duty is imposed' under § 424, and liability could flow from the violation of the regulations." (Appellant's Reply Brief at 10.)

The trial judge's ruling and judgment (J.A. at 6, 491–93), make no mention of OSHA violations, and do not discuss the issue of liability based on appellees' alleged failure to take precautions required by 24 V.I.C. § 35(c). We, therefore, find that Proctor's argument linking a violation of 24 V.I.C. § 35(c) to liability under the RESTATEMENT (SECOND) OF TORTS § 424 is not properly before this Court, and is misplaced given the issues presented.

On the issue of control, the comments to Section 414 set forth guidelines to determine whether an employer has retained sufficient control to expose him to liability. Comment c provides, for example:

c. In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

RESTATEMENT (SECOND) OF TORTS § 414 cmt. c.

This Court finds no evidence that any of the appellees named in this action retained operative control of the work. Accordingly, we affirm the trial judge's ruling that Proctor failed to put forth a legally sufficient evidentiary basis for a reasonable jury to find in his favor on the issue of control.

**D. Proctor did not fall within the foreseeable class of "others" that Restatement (Second) of Torts §§ 416 and 427 sought to protect.**

The peculiar risk doctrine found at RESTATEMENT (SECOND) OF TORTS §§ 416 and 427 generally provides that "a person who hires an independent contractor to do inherently dangerous work can be held liable for tort damages when the contractor causes injury to others by negligently performing the work." *Toland v. Sunland Housing Group, Inc.*, 18 Cal.4th 253, 74 Cal.Rptr.2d 878, 955 P.2d 504, 506 (1998); *Privette v. Superior Court*, 5 Cal.4th 689,

21 Cal.Rptr.2d 72, 854 P.2d 721, 724–25 & n. 2 (1993) (en banc). Greene testified that the apex of the roof was approximately 26 feet from the ground, and that the roof had a slope (in construction parlance) of six and twelve. (J.A. at 303–304.) The trial judge held that "[t]he construction of a building, even a tall building, is not of such a peculiar danger that would require special care by the owner or possessor of properties." (J.A. at 493.)

Proctor argues that the trial judge erred as a matter of law when he found that the roofing work being conducted by George did not involve a "peculiar risk" giving rise to liability under sections 416 or 427,[7] and, at a minimum, the jury should have been allowed to decide this issue. Proctor specifically contends that the "height and the steep pitch of the roof in this case created a special hazard, such that the 'peculiar risk' doctrine should be applicable." (Appellant's Reply Brief at 10.)

Development and Parallel first argue that section 413[8] is also encompassed in the peculiar risk doctrine.[9] Second, they argue that Proctor, a business invitee on George's request to inspect the roof, "should be considered as George's employee." (Brief for Appellees/Cross–Appellants Development Consultants, Inc. and Parallel Construction Corp. at 19.) Under either classification, Development and Parallel aver that Proctor would not be protected by the peculiar risk doctrine. Third, they argue that Proctor does not fit within the class of "others" set forth in §§ 413, 416 and 427.

Unlike, Development and Parallel, North Shore does not attempt to invoke the peculiar risk provisions set forth in Section 413. Instead, focusing on §§ 416 and 427, North Shore argues that the roofing work on Building 8 did not involve any peculiar risk of injury to Proctor, and if there is any "collateral negligence"[10] to be

---

7. RESTATEMENT (SECOND) OF TORTS § 416 provides:

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

RESTATEMENT (SECOND) OF TORTS § 427 provides: One who employs an independent contractor to do work involving a special danger to others which the employer knows or ·has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

8. RESTATEMENT (SECOND) OF TORTS § 413 provides:

One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

9. Section 413 "states the rule as to liability of the employer who fails to provide in the contract, or in some other manner, that the contractor shall take the required precautions. As to the employer who does so provide, see § 416." RESTATEMENT (SECOND) OF TORTS § 413 cmt. a.

10. The RESTATEMENT (SECOND) OF TORTS § 436 provides in relevant part:

[A]n employer of an independent contractor, unless he is himself negligent, is not liable for physical harm caused by any negligence of the contractor if

assigned, it should be to George and Proctor.

Proctor requests that this Court ignore appellees Development and Parallel's theory that he was essentially an "employee" of George, because that issue was raised for the first time on appeal. We note that Proctor was classified as a business invitee in the proceedings below. Proctor also asks that this Court reject appellee North Shore's argument on the theory of collateral negligence because it was not raised below. Having failed to raise these issues in the Territorial Court, this Court will not consider for the first time on appeal issues which were not presented to the trial court, and which were not part of the trial court's judgment.

■ In any discussion of "peculiar risk" in the Virgin Islands, the case of *Monk v. V.I. Water & Power Authority*, 32 V.I. 425, 53 F.3d 1381 (3d Cir.1995) is mentioned because it set forth the guiding principles in this jurisdiction. In *Monk*, the Court of Appeals held that *"employees* of an independent contractor are not included within the protection of 'others' under the peculiar risk provisions of Chapter 15, of the Restatement." *Monk*, at 1393 (emphasis added). The caveat here is that by all accounts at trial, Proctor was not employed by either George or appellees.

Whether the work in question involved a peculiar risk of harm is a mixed question of law and fact and may, in clear cases, be made by the court as a matter of law. *Stoddard v. The Penn Traffic Co.*, Civ. No. 97–6264, 1998 WL 966073, at *1 (E.D.Pa. Nov.12, 1998); *Sharkey v. Airco, Inc.*, 522 F.Supp. 646, 651 (E.D.Pa.1981), *aff'd mem.*, 688 F.2d 824 (3d Cir.1982). The

(a) the contractor's negligence consists solely in the improper manner in which the contractor does the work, and

(b) it creates a risk of such harm which is not inherent in or normal to the work, and

trial court had to make two determinations before applying the peculiar risk doctrine to the case at bar. "First of these is whether the work here involved comes within the Restatement language of a 'peculiar risk,' and second, whether plaintiff comes within the class of 'others' which the Restatement seeks to protect." *Munson v. Duval*, 11 V.I. 615, 628 (D.V.I.1975). The trial judge ruled in the negative on the first factor, and did not expressly address the second factor perhaps because, in his opinion, Proctor had already failed the first prong of the test.

The comments to Restatement § 416 explain that:

> *d.* In order for the rule in this section to apply, it is not essential that the work which the contractor is employed to do be in itself an extra-hazardous or abnormally dangerous activity, or that it involve a very high degree of risk to those in the vicinity. It is sufficient that it is likely to involve a peculiar risk of physical harm unless special precautions are taken, even though the risk is not abnormally great. A "peculiar risk" is a risk differing from the common risks to which persons in general are commonly subjected by the ordinary forms of negligence which are usual in the community. It must involve some special hazard resulting from the nature if the work done, which calls for special precautions.

RESTATEMENT (SECOND) OF TORTS § 416 cmt. d. Our review has left no doubt that what constitutes an "inherently dangerous" activity is a difficult question. *Accord Walden v. U.S. Steel Corp.*, 567 F.Supp. 1443, 1451 (N.D.Ala.1983). The comments to Restatement Section 427 provide that

(c) the employer had no reason to contemplate the contractor's negligence when the contract was made.

"[t]he rule applies equally to work which, although not highly dangerous, involves a risk recognizable in advance that danger inherent in the work itself, or in the ordinary or prescribed way of doing it, may cause harm to others." RESTATEMENT (SECOND) OF TORTS § 427 cmt. c (emphasis added). That is, an inherently dangerous activity must only present a foreseeable and significant risk of harm to others if not carefully carried out. Walden, 567 F.Supp. at 1451.

Here, the trial judge found that the construction of "a building, even a tall building" was "not of such peculiar danger that would require special care by the owner." (J.A. at 493.) The determination of what constitutes an inherently dangerous activity should be made by the trier of fact, which is in the best position to evaluate the inherent danger of the work in different circumstances. Walden, 567 F.Supp. at 1451.

This Court finds that this was not a "clear case" which justified judgment as a matter of law, and based upon the evidence presented, the peculiar risk issue should have been submitted to the jury. See Stoddard, 1998 WL 966073, at *1. While this Court finds that the trial judge should have affirmatively stated that Proctor was considered an "other", we, nonetheless, affirm the trial judge's grant of judgment as a matter of law because Proctor failed to present sufficient evidence that he falls within the foreseeable class of "others" which RESTATEMENT (SECOND) OF TORTS §§ 416 and 427 seek to protect.

Proctor simply failed to present evidence that appellees should have foreseen the significant risk of harm to someone in his position. In our analysis, we examine a scenario where an employer would remain liable under the peculiar risk doctrine:

A employs B, an independent contractor, to paint the wall of his building above the public sidewalk. In the course of the work a workman employed by B drops his paint bucket, which falls upon C, a pedestrian, and injures him. The danger is inherent in the work, and A is subject to liability to C.

RESTATEMENT (SECOND) OF TORTS § 427 illus. 1. In this example, the injury to C was a direct and foreseeable result of an act of the independent contractor's employee. Second, it would be foreseeable for someone working above a public sidewalk to drop something, thereby injuring a pedestrian. This Court finds that appellees cannot reasonably be expected to foresee that a person walking in King's Alley would be invited to the roof of the building for any purpose. Appellees should not be liable to Proctor because they had no reason to foresee significant risk of harm to someone like him, and no evidence was presented to suggest otherwise. Proctor was simply not in a foreseeable class of "others", and it is primarily on this basis that this Court will affirm the trial court's ruling that there was no peculiar risk.

### E. Proctor did not assume the risk of his injuries.

At the close of plaintiff's case, the trial judge ruled that:

As a matter of law, the Court cannot rule that the plaintiff assumed the risk of ... falling off the roof in this case because the testimony would indicate that he slipped on oil that was present on the galvanize sheeting that was applied to the roof and there was no testimony that the plaintiff knew of the particular risk or was warned of the particular risk.

(J.A. at 492.)

Development, Parallel and North Shore argue that the trial judge erred in ruling

that Proctor did not assume the risk of his injuries because his mental abilities were above average; he had extensive experience working at heights; he fully understood and appreciated the risk of harm to himself; he routinely walked atop roofs without wearing safety equipment, and he considered the practice safe and reasonable; and finally, he voluntarily and knowingly chose to enter the area of risk and assumed the risk of his injuries.

Proctor argues that the assumption of risk defense requires proof that he knew of the specific risk involved, and there was no evidence presented from which the jury could find that he knew of the oil on the galvanize.

The Restatement sets forth the assumption of risk defense in §§ 496A–G, but appellees/cross-appellants rely on tenets of sections 496B–D.[11] For purposes of this discussion, Section 496D is perhaps the most relevant with respect to the elements of knowledge and appreciation, and it provides that "[e]xcept where he expressly so agrees, a plaintiff does not assume a risk of harm arising from the defendant's conduct unless he then knows of the existence of the risk and appreciates its unreasonable character." RESTATEMENT (SECOND) OF TORTS § 496D.

■ Under Virgin Islands law, a defendant must prove four elements to perfect a defense of assumption of risk: (1) plaintiff had knowledge of risk involved; (2) the plaintiff appreciated character of that risk; (3) plaintiff voluntarily assumed that risk; and (4) plaintiff's conduct in knowingly and voluntarily confronting the risk was reasonable. *In Re Tutu Wells Contamination Litig.*, 909 F.Supp. 999, 1003 (D.Vi. 1995) (citations omitted). "The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates," but the "plaintiff's own testimony as to what he knew, understood, or appreciated, is not necessarily conclusive." RESTATEMENT (SECOND) OF TORTS § 496D cmts. c and d. Finally, note that

> [t]he basis of assumption of risk is the plaintiff's consent to accept the risk and look out for himself. Therefore he will not be found … to assume any risk unless he has knowledge of its existence. This means that he must not only be aware of the facts which create the danger, but must also appreciate the danger itself and the nature, character, and extent which make it unreasonable…. His failure to exercise due care either to discover or to understand the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence.

*Id.* at cmt. b.

■ In this case, George testified that he did not tell Proctor that the galvanize was slippery, despite the fact that he knew

11. **§ 496B. Express Assumption of Risk**
A plaintiff who by contract or otherwise expressly agrees to accept a risk of harm arising from the defendant's negligent or reckless conduct cannot recover for such harm, unless the agreement is invalid as contrary to public policy.
RESTATEMENT (SECOND) OF TORTS § 496B.
**§ 496C. Implied Assumption of Risk**
(1) Except as stated in Subsection (2), a plaintiff who fully understands a risk of harm to himself or his things caused by the defendant's conduct or by the condition of the defendant's land or chattels, and who nevertheless voluntarily chooses to enter or remain, or to permit his things to enter or remain within the area of that risk, under circumstances that manifest his willingness to accept it, is not entitled to recover for harm within that risk.
(2) The rule stated in Subsection (1) does not apply in any situation in which an express agreement to accept the risk would be invalid as contrary to public policy.
RESTATEMENT (SECOND) OF TORTS § 496C.

that new galvanized sheeting from the manufacturer has an oil film that requires time to dry in he sun. George also did not tell Proctor that there were no safety ropes; and, lastly, he did not tell Proctor that all the screws were not in place. (J.A. at 97–98.)

While Proctor's age, intelligence and experience are relevant factors, one cannot ignore how little Proctor knew about the conditions on this particular roof. Because this Court finds no evidence that Proctor had sufficient knowledge to have assumed the risk, we affirm the trial judge on his ruling that appellees had not proven the elements of assumption of the risk.

## II. CONCLUSION

For the reasons stated above, this Court finds: (1) that the Territorial Court did not err in holding that there was no evidence from which the jury could reasonably infer that defendants knew, or should have known, of the presence of oil on the galvanized sheeting; (2) that the Territorial Court did not err in holding that, as matter of law, there was no evidence of "active participation" by defendants in the roofing work; (3) that Proctor did not fall within the foreseeable class that Restatement §§ 416 and 427 sought to protect; and finally (4) that the trial court did not err in finding that Proctor did not assume the risk of his injuries.